**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Keller Paving & Landscaping Inc., and Employers Mutual Casualty Company, | ) ) ) | **ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Keith Zaste and Bruce Morin, individually, and dba KB Construction, | ) ) ) | Case No. 4:06-cv-092 |
| Defendants. | ) | |

Before the Court is the Plaintiffs' "Motion for Restraining Order" filed on December 27, 2006. For the reasons set forth below, the Court denies the motion.

**I.   BACKGROUND**

This matter arises from a construction contract dispute. The following facts are gleaned from the pleadings filed in the case. The plaintiffs include Keller Paving and Landscaping, Inc., ("Keller Paving") and Employers Mutual Casualty Company. The defendants are Keith Zaste and Bruce Morin, individually and doing business as KB Construction.

On October 18, 2006, the Defendants filed a complaint in the Turtle Mountain Tribal Court alleging that Keller Paving had entered into a construction contract with the Defendants to perform concrete work in New Town, North Dakota. See Docket No. 1-2. The complaint alleged that Keller Paving breached the contract and the Defendants were damaged in the amount of $25,634.56 as a result of the alleged breach. The record does not indicate whether judgment has been entered on the complaint in Turtle Mountain Tribal Court.

1

During this same period, Keller Paving, along with Employers Mutual Casualty Company as surety, was a subcontractor for Comstock Construction, Inc., ("Comstock Construction"), and had subcontracted to perform paving and landscaping work at the new Belcourt High School in Belcourt, North Dakota. Subsequent to the filing of the complaint in Tribal Court, the Defendants filed a motion with the Turtle Mountain Tribal Court requesting that the Tribal Court freeze Keller Paving's assets and/or revenue derived from the construction subcontract between Keller Paving and Comstock Construction. The Tribal Court granted that order on October 25, 2006. See Docket No. 1-3. According to Dean Keller, the owner and operator of Keller Paving, assets in the amount of $112,312.70 have been frozen by the Tribal Court since October 25, 2006. It is unclear from the record why there would be a need to freeze $112,312.70 of Keller Paving's assets when the amount at issue in the underlying contract dispute in Tribal Court is only $25,634.56.

In the motion for a temporary restraining order, Keller Paving contends that the Defendants have acted inappropriately in seeking and obtaining a Tribal Court order freezing the Plaintiff's account. Keller Paving contends that "[t]he freeze on monies has detrimentally effected (sic) the cash flow of [Keller Paving's] business and could have long standing, if not permanent, ramifications." See Docket No. 4. Keller Paving further argues that the complaint filed by the Defendants in Tribal Court stems from a construction site on non-Indian land in New Town, North Dakota, and not out of the Belcourt High School construction project, and that the Defendants seized Keller Paving's property without a judgment, without a bond, and without appropriate Tribal Court procedure.

The Plaintiffs request a temporary restraining order enjoining the Defendants from directly or indirectly freezing any assets of the Plaintiffs' and any payments due Keller Paving as a result of work done at the construction site of the new Belcourt High School.

## II.   LEGAL DISCUSSION

Rule 65(b) of the Federal Rules of Civil Procedure governs temporary restraining orders and provides, in relevant part, as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Applications for both preliminary injunctions and temporary restraining orders are measured against the factors set forth in Dataphase Systems, Inc., v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*).  The Dataphase factors include "(1) the threat of irreparable harm to the moving party; (2) the movant's likelihood of success on the merits; (3) the balance between the harm to the movant if the injunction is denied and the harm to other parties if the injunction is granted; and (4) the public interest."  Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (citing Dataphase, 640 F.3d 109, 113).  The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant.  Baker v. Electric Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer System, Inc. v. Modern Banking System, Inc., 871 F.2d 734, 737 (8th Cir. 1989) (*en banc*).  "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward

granting the injunction." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citing Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993); Calvin Klein Cosmetics Corporation v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987)). Trial courts have broad discretion in ruling on requests for preliminary injunctions and temporary restraining orders. See Energy, Arkansas, Inc. v. Nebraska, 210 F.3d 887, 898 (8th Cir. 2000).

### A.   PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's "likelihood of success on the merits" the Court should "weigh the case's particular circumstances to determine whether the balance of equities so favor the movant that justice requires [intervention] to preserve the status quo until the merits are determined." Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 59 F.3d 80, 83 (8th Cir. 1995). The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The motion for injunctive relief fails to cite to or discuss the Dataphase factors. The only support the Plaintiffs provide the Court to indicate a probability of success on the merits is to state that "the Defendants have inappropriately seized property without a Judgment and in Plaintiff's (sic) strong opinion, without any merits, without bond and without appropriate Tribal Court procedure." See Docket No. 4.

The Plaintiffs' mere opinion that the Defendants acted inappropriately is not sufficient to establish a likelihood of the Plaintiffs' success on the merits. The Court finds that the Plaintiffs have failed to meet their burden of establishing that they are likely to succeed on the merits of their

claims. Accordingly, the Court finds that this factor weighs against the issuance of a temporary restraining order.

### B.   IRREPARABLE HARM

The failure of a movant to show irreparable harm is an "independently sufficient basis upon which to deny a preliminary injunction." Blue Moon Entertainment, L.L.C. v. Bates City, 441 F.3d 561, 564 (8th Cir. 2006). Harm which can be compensated by an award of monetary damages is not considered irreparable harm. See Caballo Coal Co. v. Indiana Michigan Power Co., 305 F.3d 796, 801 (8th Cir. 2002); Sharp v. Parents in Community Action, Inc., 172 F.3d 1034, 1040 (8th Cir. 1999); National Basketball Assoc. v. Minnesota Professional Basketball, L.P., 56 F.3d 866, 870 (8th Cir. 1995).

The Plaintiffs assert that "[t]he freeze on monies has detrimentally effected (sic) the cash flow of [Keller Paving's] business and could have long standing, if not permanent, ramifications." The Court finds that the Plaintiffs have failed to establish that they will suffer irreparable harm if a temporary restraining order is not issued. It is unclear whether the Plaintiffs have already suffered a loss or whether they are speculating as to a future loss. In addition, the Plaintiffs have failed to explain why their injury is not compensable with money damages. The Court finds that any injury the Plaintiffs have asserted could be compensated with an award of monetary damages and the irreparable harm factor weighs against the grant of a temporary restraining order.

### C.   BALANCE OF HARMS

The Plaintiffs have failed to address the balance between the harm to them if the temporary restraining order is denied and the harm to the Defendants if the injunction is granted.  It is clear that the burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant.  Baker v. Electric Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994).  The Court finds that the Plaintiffs have failed to demonstrate that this factor weighs in favor of granting the temporary restraining order.

### D.   PUBLIC INTEREST

The Plaintiffs have also failed to address the public interest factor as required in Dataphase.  As a result, the Court finds that the Plaintiffs have failed to demonstrate that the public interest weighs in favor of granting the temporary restraining order.

### III.   CONCLUSION

The Court has carefully reviewed the pleadings and finds that the Plaintiffs have failed to meet the requirements under Rule 65(b) of the Federal Rules of Civil Procedure.  Based on the sparse information contained in the complaint and motion, the Court is not in a position to enter the

requested injunctive relief at this stage.[1] The Court **DENIES** the Plaintiffs' Motion for a Temporary Restraining Order. (Docket No. 3).

    **IT IS SO ORDERED.**

Dated this 3rd day of January, 2007.

                                                  */s/  Daniel L. Hovland*
                                                Daniel L. Hovland, Chief Judge
                                                United States District Court

---

[1] The parties are urged to meet and confer in an attempt to resolve this contractual dispute. The Court would note that the Turtle Mountain Tribal Court should be petitioned and asked to reconsider and/or modify its Order of October 25, 2006, so as to only freeze revenue or assets in the amount of $25,634.56 which is the total amount of damages requested in the Tribal Court action initiated by attorney Donald G. Bruce on behalf of Keith Zaste and Bruce Morin. Based on the limited information contained in the federal court docket, there appears to be no reason to freeze assets in excess of the total damages sought in Tribal Court. However, the record before the Court is scant and incomplete.