**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Keller Paving & Landscaping Inc., and ) <br> Employers Mutual Casualty Company,  ) <br> ) <br> Plaintiffs,            ) <br> ) <br> v.                     ) <br> ) <br> Keith Zaste and Bruce Morin, individually, ) <br> and dba KB Construction,         ) <br> ) <br> Defendants.           ) | **ORDER GRANTING DEFENDANTS'** <br> **MOTION TO DISMISS** <br><br><br> Case No. 4:06-cv-092 |

Before the Court is the Defendants' "Motion for Dismissal" filed on January 5, 2007. The Plaintiffs filed a response in opposition on February 16, 2007. For the reasons set forth below, the Court grants the motion.

I.   **BACKGROUND**

This matter arises from a construction contract dispute. The following facts are gleaned from the pleadings filed in the case. The plaintiffs include Keller Paving and Landscaping, Inc., ("Keller Paving"), a company with its principal place of business in Minot, North Dakota, and Employers Mutual Casualty Company, an insurance company with its principal place of business in Des Moines, Iowa. See Docket No. 1. The defendants are Keith Zaste and Bruce Morin, individually and doing business as KB Construction. Zaste and Morin are members of the Turtle Mountain Band of Chippewa Indians and reside on the Turtle Mountain Indian Reservation. See Docket No. 13.

1

On October 18, 2006, the Defendants filed a complaint in the Turtle Mountain Tribal Court alleging that Keller Paving had entered into a construction contract with the Defendants to perform concrete work in New Town, North Dakota. See Docket No. 1-2. The complaint alleged that Keller Paving breached the contract and that the Defendants were damaged in the amount of $25,634.56 as a result of the alleged breach. The record does not indicate whether judgment has been entered on the complaint in Turtle Mountain Tribal Court.

During this same period, Keller Paving, along with Employers Mutual Casualty Company as surety, was a subcontractor for Comstock Construction, Inc., ("Comstock Construction"), and had subcontracted to perform paving and landscaping work at the new Belcourt High School in Belcourt, North Dakota. Subsequent to the filing of the complaint in Tribal Court, the Defendants filed a motion with the Turtle Mountain Tribal Court requesting that the Tribal Court freeze Keller Paving's assets and/or revenue derived from the construction subcontract between Keller Paving and Comstock Construction. The Tribal Court granted that order on October 25, 2006. See Docket No. 1-3. According to Dean Keller, the owner and operator of Keller Paving, assets in the amount of $112,312.70 have been frozen by the Tribal Court since October 25, 2006. It is unclear from the record why there would be a need to freeze $112,312.70 of Keller Paving's assets when the amount at issue in the underlying contract dispute in Tribal Court is only $25,634.56.

The Plaintiffs filed a complaint on November 29, 2006, seeking declaratory relief under the Declaratory Judgment Act codified at 28 U.S.C. § 2201. See Docket No. 1. On December 27, 2006, the Plaintiffs filed a motion for temporary restraining order, which the Court denied on January 3, 2007. See Docket Nos. 3, 11. The Defendants then filed a motion to dismiss on January 5, 2007. See Docket No. 12. The Defendants provide the following reasons for dismissal: (1) the Court lacks

2

subject matter jurisdiction; (2) the Plaintiffs' complaint fails to state a claim for relief; and (3) the Plaintiffs have failed to exhaust tribal remedies as there is an action pending in Tribal Court.

The Plaintiffs contend that federal question jurisdiction exists, and that exhaustion of tribal remedies is not required. The Plaintiffs contend that a Tribal Court hearing was held on February 1, 2007, and that the Tribal Court requested that Keller file a replevin bond with the Tribal Court, immediately pay the Defendants $15,000.00, and then $30,000.00 of the $112,312.70 would remain frozen. See Docket No. 18. Keller did not accept this request. The record is devoid of further filings or activity in the Tribal Court system.

## II.  LEGAL DISCUSSION

### A.  SUBJECT MATTER JURISDICTION

In the complaint, the Plaintiffs invoke 28 U.S.C. § 1332 which provides that "district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc., 263 F.3d 816, 819 (8th Cir. 2001) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). It is well-established that a Native American is treated as any other citizen for jurisdictional purposes. See 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3622 (2d ed. 1984 & Supp. 2004). Therefore, a Native American that resides on the reservation is a citizen of the state in which the reservation is located.

It is undisputed that the Defendants reside within the exterior boundaries of the Turtle Mountain Reservation in Belcourt, North Dakota. Under the law, Zaste and Morin are considered

to be citizens of North Dakota for jurisdictional purposes. Although Employers Mutual Casualty Company has its principal place of business in Des Moines, Iowa, it is undisputed that Keller Paving & Landscaping is based in Minot, North Dakota. Because Keller Paving & Landscaping and the Defendants are both residents of North Dakota, complete diversity does not exist. The Defendants also contend that the requisite amount in controversy is not satisfied. However, the Court need not address that argument because it is clear that complete diversity does not exist between the Plaintiffs and the Defendants. The Court finds it lacks diversity jurisdiction over this action under 28 U.S.C. § 1332.

The Plaintiffs also contend that the Court has federal question jurisdiction under 28 U.S.C. § 1331. The Eighth Circuit has held that "[t]he existence of tribal court jurisdiction itself presents a federal question within the scope of 28 U.S.C. § 1331." Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412, 1421-22 (8th Cir. 1996). In National Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845 (1985), the United States Supreme Court held that federal courts have authority to determine, as a matter arising under federal law for federal question jurisdiction, whether a tribal court has extended the limits of its jurisdiction. Id. at 853. However, "[a]fter concluding that federal courts have subject-matter jurisdiction to entertain such a case, ... a federal court should stay its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction." El Pas Natural Gas Co. v. Neztsosie, 526 U.S. 473, 483 (1999).

The Plaintiffs contend that the Tribal Court does not have jurisdiction over this dispute because the debt complained of by the Defendants arose out of acts on the Fort Berthold Indian Reservation, a separate sovereign entity from the Turtle Mountain Indian Reservation. To the extent that the Plaintiffs question the Turtle Mountain Tribal Court's jurisdiction, it is clear that federal

subject matter jurisdiction exists under 28 U.S.C. § 1331. However, the Court must next determine whether exhaustion of tribal remedies is necessary.[1]

### B. TRIBAL COURT EXHAUSTION

It is well-established that principles of comity require that tribal court remedies must be exhausted before a federal district court should consider relief in a civil case regarding tribal-related activities on reservation land. Krempel v. Prairie Island Indian Community, 125 F.3d 621, 622 (8th Cir. 1997) (citing Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9 (1987); National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845 (1985); Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412 (8th Cir. 1996)). The purpose of the doctrine has been explained by the United States Supreme Court as follows:

> [T]he existence and extent of a Tribal Court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
>
> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal basis for the challenge. Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to

---

[1] Any willingness on the Court's behalf to entertain relief under the Declaratory Judgment Act must similarly yield to the applicability of the tribal exhaustion doctrine. See Gaming World International, Ltd. v. White Earth Band of Chippewa, 317 F.3d 840, 849 (8th Cir. 2003) ("The issue of tribal exhaustion is a threshold one because it determines the appropriate forum.").

>determine his own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

National Farmers Union, 471 U.S. 845, 855-56.

Exhaustion of tribal court remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts. LaPlante, 480 U.S. 9, 17. In short, "[t]he tribal exhaustion doctrine is based on 'a policy of supporting self-government and self-determination,'" and although the rule is prudential rather than jurisdictional, "[e]xhaustion is mandatory . . . when a case fits within the policy." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa, 317 F.3d 840, 849 (8th Cir. 2003) (citing LaPlante, 480 U.S. 9, 20 n.14; National Farmers Union, 471 U.S. 845, 856; Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1300 (8th Cir. 1994); Burlington N. R.R. Co. v. Crow Tribal Council, 940 F.2d 1239, 1245 (9th Cir. 1991)).

However, as noted by the United States Supreme Court and the Eighth Circuit Court of Appeals "[e]xhaustion is not required if an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, if the action is patently violative of express jurisdictional prohibitions, or if exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." DeMent v. Oglala Sioux Tribal Court, 874 F.2d 510, 516 (8th Cir. 1989) (citing National Farmers Union, 471 U.S. 845, 856 n. 21.)).

The Plaintiffs contend that all of these exceptions apply and there should be no tribal exhaustion requirement. The Plaintiffs further contend that the Defendants were motivated by a desire to harass and brought the action in the Turtle Mountain Tribal Court in bad faith because the Defendants were upset about the payment dispute arising from the New Town construction job. The

Plaintiffs have provided no facts to support their contention that the tribal court suit was motivated by a desire to harass or brought in bad faith.  Further, the Plaintiffs have not stated any express jurisdictional provisions which are patently violated by the tribal court action.  The Court finds that neither of these exceptions to the tribal exhaustion doctrine apply.

The Plaintiffs also contend that the Turtle Mountain Tribal Court did not comply with the Turtle Mountain Tribal Rules of Court or Tribal law when it issued its ex parte order because there were both substantive and procedural deficiencies.[2]  These are arguments that the Plaintiffs may raise to the Tribal Court and, if necessary, to the Tribal Appellate Court.  The Plaintiffs further contend that there are no adequate opportunities to challenge the Turtle Mountain Tribal Court's jurisdiction.  The Plaintiffs' failure to challenge the Tribal Court's actions and jurisdiction in Tribal Court does not mean there is not an adequate opportunity for such challenges.  The Court finds that the Plaintiffs do not meet any of the exceptions to the tribal exhaustion requirement.

### III.     CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss is **GRANTED** without prejudice.  (Docket No. 12).  The parties are required to exhaust tribal court remedies before the Court will become involved in this dispute.

---

[2] The Court would note in passing that it finds troubling the Tribal Court's order to freeze assets in an amount more than four times that in controversy and pursuant to an ex parte order stemming from activity that occurred on a different Indian Reservation.  Nevertheless, this Court will afford the tribal courts the first opportunity to address such matters.

**IT IS SO ORDERED.**

Dated this 2nd day of March, 2007.

                                                */s/  Daniel L. Hovland*
                                                Daniel L. Hovland, Chief Judge
                                                United States District Court